**IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| **ROBERT ACHOE** ) | |
| **302 Mattawoman Way** ) | |
| **Accokeek, MD  20607** ) | |
| ) | **Case No.: 17-2231** |
| *Plaintiff*, ) | |
| ) | |
| **v.** ) | |
| ) | **Jury Trial Demand** |
| **JAY CLAYTON, CHAIR,** ) | |
| **U.S. SECURITIES AND EXCHANGE** ) | |
| **COMMISSION** ) | |
| **100 F Street, NE** ) | |
| **Washington, DC 20549** ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**COMPLAINT**

Plaintiff Robert Achoe, by and through counsel, hereby files this Complaint for
violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et
seq*., and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §
633a., against Defendant Jay Clayton, Chair, U.S. Securities and Exchange Commission.

**Jurisdiction and Venue**

1.     This court has jurisdiction over the subject matter of this complaint pursuant to 28
U.S.C. § 1331, 42 U.S. C. § 2000e *et seq.,* and 29 U.S.C. § 633a.

2.     Plaintiff has exhausted all administrative remedies prior to filing suit.

3.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some
events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and
Defendant may be found in this judicial district.

## Parties

4.      Plaintiff Robert Achoe (hereinafter "Plaintiff" or "Achoe") is an African American male, born in August 1962 and was fifty-two (52) years old at the time of the events giving rise to this Complaint.

5.      Defendant Jay Clayton (hereinafter "Defendant" or the "SEC" or "Agency") is the Chair of the U.S. Securities and Exchange Commission, an administrative agency of the United States government and an "employer" within the meaning of the statutes under which Plaintiff brings his claims.

## Factual Allegations

6.      Plaintiff Robert Achoe began employment at the U.S. Securities and Exchange Commission in 2004 as a Paralegal Specialist, SK-12.   In 2011, Plaintiff Achoe transferred to the position of Management and Program Analyst in the Continuity of Operations Program, at the SK-12 level in the Office of Security Services, Office of Support Operations.   Plaintiff Achoe was the first full time employee in the program. In this position, Plaintiff Achoe reported to Kelly Gibbs, a Caucasian female in her thirties, and the Chief of the Office of Security Services.

7.      Plaintiff Achoe completed a background investigation on July 2, 2013 for his position as a Program and Management Analyst (his actual job title is; "Management and Program Analyst") with the SEC. The background investigation included a credit report that disclosed delinquent debts. On November 27, 2013, Plaintiff Achoe provided to the Agency a copy of a "Trial Modification Plan," for his mortgage which advised Plaintiff Achoe and his wife to make three timely mortgage payments and upon completion of the mortgage payments, Plaintiff Achoe and his wife would be considered for a loan

modification. Plaintiff Achoe and his wife made the mortgage payments and were approved for a loan modification.  The loan modification notice was presented to Ms. Gibbs, and she demanded to see the Loan Modification Agreement for Plaintiff and his wife, which detailed his mortgage loan schedule, payment amount, and interest rates. Plaintiff Achoe responded to Ms. Gibbs: "Please show me the SEC Financial Regulation or SEC Policy that entitles you, as a member of Personnel Security, to see that level of detail because I want to read it for myself." Ms. Gibbs was unable to produce such a regulation, rule or policy because it does not exist within the SEC or Office of Personnel Management. Plaintiff Achoe informed Ms. Gibbs she was not going to get to see the actual "Loan Modification Agreement" because neither she nor Personnel Security was entitled to that information.  Plaintiff Achoe and Ms. Gibbs went to the Chief of Security Services, Cedric Drawhorn, to discuss the matter. Mr. Drawhorn suggested that Plaintiff Achoe provide Ms. Gibbs the additional information she requested, and Plaintiff Achoe informed him that just as soon as she produced the regulation, rule or policy that entitled her to that information, he would gladly provide the requested information. Mr. Drawhorn then admitted, as a former Personnel Security Specialist himself, that no such regulation, rule or policy existed.  After a conversation with Mr. Drawhorn, Plaintiff Achoe provided Ms. Gibbs the requested information.  Ms. Gibbs was upset that she was proven to be incorrect in her demand for Plaintiff Achoe's personal information and for exposing the "illegitimacy" of the "Financial Watch" program she attempted to impose on Plaintiff Achoe.  Ms. Gibbs kept Plaintiff Achoe on the illegal financial watch for the next twelve (12) months.  While on the Financial Watch program, Plaintiff Achoe had to provide proof of monthly payments to the loan servicing company and Ms. Gibbs

conducted a credit inquiry monthly for each of the next twelve (12) months, thereby negatively impacting/affecting his credit score.  Ms. Gibbs singled Plaintiff Achoe out for discriminatory treatment as an African American male by requiring him to submit to a Financial Watch program which Caucasian employees were not required to submit to.

8.     In 2014, Plaintiff Achoe was diagnosed with high blood pressure and high cholesterol.  Plaintiff Achoe's doctor had prescribed two medications to treat the two medical conditions: "Lisinopril" to treat the high blood pressure and "Crestor" to treat the high cholesterol. One of key side effects of  "Lisinopril" is drowsiness/dizziness when taken depending on other additional medical factors.  One afternoon, during Plaintiff Achoe's lunch hour, he administered his daily dose of medication, which caused Plaintiff Achoe to briefly doze off in his chair located in his office. Once Plaintiff Achoe realized he had dozed off (e.g., approximately 1 to 2 minutes), Plaintiff Achoe gathered his composure and noticed that a  Physical Security Branch contractor was standing outside his office window taking a photo of him in his office utilizing a smart phone.  Plaintiff Achoe informed the contractor that taking pictures like that was not a laughing matter. The contractor turned towards Plaintiff Achoe and stated, "It was to me." Another contractor let out a simple laugh when he heard his office-mate's response to Plaintiff Achoe.  Plaintiff Achoe informed both contractors of his medical condition and of the medication that he had been prescribed. Plaintiff Achoe went on to explain to both of them, if they ever see him in his office looking like that, to please come in and check his vital signs, to ensure that he is okay medically. Plaintiff Achoe then proceeded to inform the Chief of Security Services, Cedric Drawhorn, what happened. Mr. Drawhorn informed Plaintiff Achoe that taking photos of someone without their consent was strictly

prohibited. Mr. Drawhorn assured Plaintiff Achoe that he would speak to their COTR
Cedric Watson, Branch Chief, Office of Security Services.    Following this incident,
Plaintiff Achoe received a report that Ms. Gibbs stated or suggested to management
officials that he threatened the contractors.

9.      Mr. Achoe is a large African American male, and as noted above, with a history
of medical conditions, and shortly after he began reporting to Ms. Gibbs he advised her
that he has a fear of flying and in particular flying in small aircrafts to remote locations.
Occasionally, travel is required for Plaintiff Achoe's position.  The program Plaintiff
Achoe is assigned to requires team members to interact with the SEC Regional Offices
which are geographically dispersed throughout the United States. On a regularly and
recurring schedule, Plaintiff Achoe routinely travels to Richmond, Virginia to conduct
monthly routine testing of their classified systems as required by the COOP
Communications Plan Directive.  Also, every quarter, Plaintiff Achoe routinely travels to
Mt. Weather, located in Blueridge, Virginia to attend a classified communications
managers meeting.  Ms. Gibbs did not believe that Plaintiff Achoe had a legitimate fear
of flying and denied his requests to ride  Amtrak and Ms. Gibbs denied Plaintiff Achoe's
request for him to drive.  Ms. Gibbs mentioned the amount of money that Plaintiff Achoe
would be reimbursed for making the drive and how it exceeded the cost of a roundtrip
airplane ticket.  Plaintiff Achoe then offered to sign a waiver for the reimbursed cost
above the cost of a round trip ticket. Plaintiff Achoe also offered to ride Amtrak because
he knew of another SEC employee assigned to the OIT who also has a fear of flying and
that employee always uses Amtrak for longer distance official government travel.  Ms.
Gibbs denied this request as well.

10.     Plaintiff Achoe was assigned a PD/job description from August 2013 through June 2015.  On June 25, 2015, Kelly Gibbs emailed Plaintiff Achoe a new Position Description, SK-301-13 Emergency Preparedness Specialist.  Four days later, on June 29, 2015, after realizing that the SK-301-13 Emergency Preparedness Specialist Position Description included a pay grade increase, Kelly Gibbs replaced the SK-301-13 position description with a completely new rewritten SK-343-12 Management and Program Analyst PD.  The SK-343-12 position description includes a high level of complexity, program specific responsibilities, program capability requirements, a mandatory personnel security clearance requirement (TS/SCI), along with additional program complexities and requirements.  In comparison, all of Plaintiff Achoe's colleagues' position descriptions are titled as "Security Specialist."  Their position descriptions do not have program specific/targeted responsibilities, a high level of complexity, or program capability requirements.  Also, neither of his program colleagues is required to obtain and maintain a personnel security clearance (TS/SCI), but yet, all of them have built-in pay grade promotions to SK-13 and a clear opportunity for "upward mobility" and "career ladder."  Instead of providing equal opportunity, fairness and impartiality among all team members, Kelly Gibbs colluded with other members of management to ensure that Plaintiff Achoe's new position description did not provide any possibility of "Career Upward Mobility" or provide a "Career Ladder" opportunity within the SEC COOP Program, Office of Security Services or some other Division or Office within the U.S. Securities and Exchange Commission.  The new PD drafted by Kelly Gibbs incorporated categorically almost every programmatic role, requirement and

responsibility mandated by the SEC COOP Program without the possibility of upward mobility.

11.    The new PD included, but is not limited to the following required skills, abilities and capabilities.  Neither of Plaintiff Achoe's colleagues is required to have any of the following duties but both have higher pay grades than Plaintiff Achoe;

**Program Management**

- Program Management Oversight and Governance

- Administrative Program Maintenance (e.g. Telework Agreements, Corrective Action Planning, Support Contracts, etc.)

- Classified Equipment or Technology Maintenance (e.g. Sensitive Compartmented Information Facility (SCIF) Custodial Access Management, Satellite Phone Maintenance)

- Classified Communication Testing Requirements (e.g. Classified Data Systems, Faxes, Documents, Satellite Phones, Secure Mobile Devices, HF/ALE, etc.)

- Emergency Notification System **(Assurance – currently the COOP Program System Administrator)**

- Emergency Communications Capability Issuance and Testing (GETS and WPS) **(currently the COOP Program System Administrator)**

- NC4 Alert System **(currently the COOP Program System Administrator)**

**Analysis**

- Identification of Mission Essential Functions

- Business Process Analysis (BPA)

- Business Impact Analysis (BIA)

- Risk Analysis

**COOP Program Planning and Evaluation**

- Stakeholder Engagement/Teamwork

- COOP Plan Review and Updating

- COOP Plan Evaluation

- Continuity Readiness and Reporting (e.g. Monthly, Quarterly and Annual Submissions to National Security Staff, etc.)

- Test, Training and Exercise Preparation and Execution

- After Action Reporting (e.g. Lessons Learned, Corrective Action Plans and Implementation Plans, etc.)

**Emergency Site Management**

- Administrative Planning

- COOP Facility/Site Contract Oversite

- Equipment Maintenance and Inspection

- Event Response and Emergency Ready Preparedness

**Security Clearance Level**

- Top Secrete/Sensitive Compartmented Information (TS/SCI)

12.    Additionally Plaintiff Achoe has custodial access to the following Classified Data Systems;

- SEC HQs Classified Data Systems & SCIF Access
- Joint Worldwide Intelligence Communications System (JWICS) – SCI Data Network Account
- Homeland Secure Data Network (HSDN) – Secrete Data Account

COOP Facility Classified Data Systems

- Classified Data Systems & SCIF Access
- (GOLD) – SCI Data Account
- (SABER) – Secrete Data Account

13.    Neither the SK-12/13 nor the SK-14 currently assigned to the COOP Program are cleared at the SCI Level, also neither the SK-12/13 or the SK-14 has been assigned any "Classified Data Networks."   Neither of them has *"unescorted access"* to any SCIF located within the United States of America (USA); however, Plaintiff Achoe can be granted unescorted access to any SCIF located within the USA.  Additionally, neither of the above mentioned Security Specialist (SK-12/13 or the SK-14) position descriptions consist of the COOP Program specific language used to describe Plaintiff Achoe's SK-343-12, Management and Program Analyst PD.  Their PDs more accurately describe the positions being staffed by the Physical Security Branch of the Office of Security

Services.  As it pertains to the complexity of duties, it is not stated in their PD that *"all incumbents"* must be able to participate in *"Classified Briefings, Meetings, and Exercises relating to Continuity of Operations."*  It is not stated in their PD that the incumbent shall have "Skill to communicate "*highly complex information"* to others during face-to-face meetings, by phone, or email." Finally, it does not state in their PD that the incumbent shall "Assist in the development, coordination, implementation and assessment of *agency-wide force protection/anti-terrorism, weapons of mass destruction, mass casualty, emergency preparedness and emergency management training."*

14.     Currently Plaintiff Achoe is one (1) of only four (4) SEC personnel (throughout the entire SEC) certified as a Department of Homeland Security (DHS) Homeland Secure Data Network (HSDN) Trusted Agent; Plaintiff Achoe is one (1) of only three (3) SEC personnel (throughout the entire SEC) qualified to conduct "Title Globe" Communications Testing; Plaintiff Achoe is one (1) of only six (6) SEC personnel (throughout the entire SEC) qualified to be granted custodial access to the SEC HQs SCIF and the COOP Facility SCIF; Plaintiff Achoe is the only Contract Officers Technical Representative (COTR) managing 100% of SEC COOP Program support contracts.

15.     Plaintiff Achoe began reporting to Tawana Harris, an African American female, in 2015.  Plaintiff Achoe and a Caucasian male reported to Ms. Harris.

16.     In the morning hours of February 18, 2016, Ms. Harris was in the office talking to another team member who sits in the office across from Plaintiff Achoe.  Ms. Harris overheard a phone conversation Plaintiff Achoe was having with an internal stakeholder. Once Ms. Harris finished her conversation with the team member, she entered Plaintiff

Achoe office and asked him (in a whisper) to whom was he talking.   After Plaintiff Achoe identified who was on the call,  Ms. Harris proceeded to inform Plaintiff Achoe (in a sharp tone of voice) that the person that Plaintiff Achoe was having the phone conversation with was fully aware of that individual's responsibilities as the Continuity Manager, and that Ms. Harris had informed Plaintiff Achoe of the clarification made to the person previously by Plaintiff Achoe's supervisor, and  there was no reason for Plaintiff Achoe to have a conversation with the person in regards to this issue. Plaintiff Achoe had no issue with Ms. Harris correcting him about the unnecessary clarification phone conversation; however, Plaintiff Achoe did take offense to Ms. Harris's tone of voice.  In response, Plaintiff Achoe stated to Ms. Harris (in a firm voice) that "I'm not your child."  Plaintiff Achoe's office door was open, and a couple of employees heard the conversation between Ms. Harris and Plaintiff Achoe, and went to inform Ms. Gibbs.

17.    Ms. Gibbs initially had a meeting with Ms. Harris, and then Ms. Gibbs, and Ms. Harris and Plaintiff Achoe had a group meeting to discuss what happened. At the conclusion of the conversation, Plaintiff Achoe was under the impression that the matter was resolved.  Twelve days after the incident and after Plaintiff Achoe was  "Informally Counseled" by Kelly Gibbs and Ms. Harris, Plaintiff Achoe was informed by Kelly Gibbs (witnessed by Vicki Clancy, Personnel Security Branch Chief) that he was receiving a "Letter of Reprimand" on February 28, 2016. Ms. Gibbs informed Plaintiff Achoe that the reason he was receiving the "Letter of Reprimand" was for speaking loudly to his supervisor and being disruptive to the office.  Additionally, Kelly Gibbs decided to issue Plaintiff Achoe a two year "Letter of Reprimand" on a day when she knew that Ms. Harris would not be in the office to possibly disagree with the action.  Plaintiff Achoe

notified Ms. Gibbs that he totally disagreed with her characterization of the conversation between him and Ms. Harris. Plaintiff Achoe reiterated to Ms. Gibbs that all he did on the day in question was simply inform Ms. Harris that "I was not her child." Plaintiff Achoe was advised that he could be terminated if the Agency determined that there was a similar incident within a year.

18.     In or around August 2016, Plaintiff Achoe told his supervisor, Ms. Harris, what was occurring, Ms. Harris initially had some reluctance in believing what Plaintiff Achoe was describing to her as happening to him. In September 2016, one of Plaintiff Achoe's colleagues, informed Plaintiff Achoe, that he witnessed/observed the Chief (Kelly Gibbs), other management employees and full time employees as well as various contractors monitoring and eavesdropping on Plaintiff Achoe's personal phone conversations and meetings with various stakeholders held in Plaintiff Achoe's office. Plaintiff Achoe was informed that Brian Williams, his then-new coworker, had witnessed this activity on various occasions, and asked Ms. Harris, Plaintiff Achoe's supervisor, if there was something going on that he should be aware of. Plaintiff Achoe was informed by Ms. Harris that Mr. Williams had witnessed this activity on several occasions.

19.     In October 2016, Plaintiff Achoe's supervisor prepared an annual performance appraisal for him and a Caucasian male whom she supervised and submitted both evaluations to Kelly Gibbs.  Ms. Gibbs responded by arbitrarily lowering Plaintiff Achoe's evaluation but not change the evaluation of the Caucasian male employee.

20.     In December 2016, Ms. Gibbs initiated a second investigation of Plaintiff Achoe and Ms. Harris, again falsely accusing them of being disruptive in the workplace. Plaintiff Achoe retained counsel and was forced to attend an interview by an attorney in

the Agency's Human Resources department, Michelle Englar.  Ms. Englar interviewed Plaintiff Achoe in February 2017 under a threat of discipline if he did not agree to be interviewed before March 1, 2017.  The Agency was attempting to substantiate a charge to misconduct to justify taking action to terminate both Plaintiff Achoe and Ms. Harris within one year of the prior discipline.  Because the allegations were baseless and Plaintiff Achoe retained counsel, the Agency failed to take any further action, and even failed to notify Plaintiff Achoe of the results of the investigation.

21.     In June 2017, the Agency designated Aimee Primeaux, a Caucasian female, as Plaintiff Achoe and Ms. Harris' first line supervisor, and supported her efforts to have Plaintiff Achoe and Ms. Harris removed from their positions. Over a period of four months, Ms. Primeaux began harassing both Plaintiff Achoe and Ms. Harris.  On June 30, 2017, Ms. Primeaux requested that Plaintiff Achoe come to her office to clarify information he had provided to her earlier in the week.  After several questions to Plaintiff Achoe about questions he had already answered, Mr. Achoe became frustrated and commented that Ms. Primeaux did not believe anything he said.  Plaintiff Achoe was threatened with discipline.  The harassing and disrespectful treatment continued for four months.  As late as October 2017, Ms. Primeaux continued to harass Plaintiff Achoe and falsely accused him of misconduct and insubordination each instance he attempted to respond to her false accusations against him.  Ms. Primeaux harassed Ms. Harris on a daily basis and made false accusations about her performance and placed her on a PIP after supervising her for approximately 120 days.

22.     Plaintiff Achoe filed an internal EEO complaint with the Agency, and the Agency issued a final decision concluding that it did not discriminate against Plaintiff Achoe.

Because certain claims are like or related to the claims submitted to the Agency, Plaintiff

Achoe has exhausted all administrative remedies and the claims are properly before this

court.

## <u>Count I</u>

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e** *et seq.*
*Race and Color Discrimination*

23.     Plaintiff incorporates by reference paragraphs 1 through 22 as if fully stated

herein.

24.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment

practice for an employer to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race and color.

25.     At all pertinent times, the Defendant was an employer subject to provisions of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

26.     At all pertinent times, Plaintiff was an employee entitled to protection under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

27.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*.,

Defendant knowingly and intentionally subjected Plaintiff to disparate treatment and

created a hostile work environment based on his race and color by: 1) denying Plaintiff

Achoe the same Specialist title given to his colleagues at the SK-13 level and rescinding

a SK-13 position description given to Plaintiff Achoe and rewriting Plaintiff Achoe's

position description with higher level duties than his Caucasian colleagues but capping

the grade to SK-12 to prevent Plaintiff Achoe from being promoted; 2) requiring Plaintiff

Achoe to submit to an unauthorized Financial Watch program; 3) falsely accusing Plaintiff Achoe of threatening contractors after a contractor took and unauthorized photographs of him; 4) denying Plaintiff's requests to travel by Amtrak or his personal vehicle because of a phobia of flying; 5) issuing Plaintiff Achoe a two year Letter of Reprimand for a minor insignificant conversation with his supervisor; 6) monitoring Plaintiff Achoe's telephone calls, meetings and conversations in the workplace; 7) arbitrarily lowering Plaintiff Achoe's performance evaluation in October 2016; 8) subjecting Plaintiff Achoe to a second investigation in February 2017 based on a false accusations about being disruptive in the workplace in an effort to justify his termination from employment; and 9) assigning Plaintiff Achoe to the supervision of Aimee Primeaux, and subjecting him to daily and weekly threats of discipline for each instance that he responded to false accusations about his performance and conduct.

28.    As a result of such acts, Plaintiff has suffered damages.


## Count II

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e *et seq.***
***Retaliation***

29.    Plaintiff incorporates by reference paragraphs 1 through 28 as if fully stated herein.

30.    Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because such individual filed a complaint of discrimination.

31.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

32.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

33.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant knowingly and intentionally subjected Plaintiff to retaliation and a retaliatory hostile work environment after he complained about discrimination by: 1) denying Plaintiff Achoe the same Specialist title given to his younger and Caucasian colleagues at the SK-13 level and rescinding a SK-13 position description given to Plaintiff Achoe and rewriting Plaintiff Achoe's position description with higher level duties than his Caucasian colleagues but capping the grade to SK-12 to prevent Plaintiff Achoe from being promoted; 2) requiring Plaintiff Achoe to submit to an unauthorized Financial Watch program; 3) falsely accusing Plaintiff Achoe of threatening contractors after a contractor took and unauthorized photographs of him; 4) denying Plaintiff's requests to travel by Amtrak or his personal vehicle because of a phobia of flying; 5) issuing Plaintiff Achoe a two year Letter of Reprimand for a minor insignificant conversation with his supervisor; 6) monitoring Plaintiff Achoe's telephone calls, meetings and conversations in the workplace; 7) arbitrarily lowering Plaintiff Achoe's performance evaluation lower than his younger and Caucasian colleague in October 2016; 8) subjecting Plaintiff Achoe to a second investigation in February 2017 based on a false accusations about being disruptive in the workplace in an effort to justify his termination from employment; and 9) assigning Plaintiff Achoe to the supervision of Aimee Primeaux, and subjecting him to

daily and weekly threats of discipline for each instance that he responded to false accusations about his performance and conduct.

## Count III

### Violation of the Age Discrimination in Employment Act
### 29 U.S.C. § 633a
### *Age Discrimination*

34.     Plaintiff incorporates by reference paragraphs 1 through 33 as if fully stated herein.

35.     The Age Discrimination in Employment Act, 29 U.S.C. § 633a, provides that, in executive agencies of the United States, all personnel actions affecting employees or applicants for employment who are at least 40 years of age shall be free from discrimination based on age.

36.     At all pertinent times, the Defendant was an employer subject to provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

37.     At all pertinent times, Plaintiff was an employee entitled to protection under the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

38.     In violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a, Defendant knowingly and intentionally subjected Plaintiff to discrimination and created a hostile work environment based on her age by: 1) denying Plaintiff Achoe the same Specialist title given to his colleagues at the SK-13 level and rescinding a SK-13 position description given to Plaintiff Achoe and rewriting Plaintiff Achoe's position description with higher level duties than his Caucasian colleagues but capping the grade to SK-12 to prevent Plaintiff Achoe from being promoted; 2) requiring Plaintiff Achoe to submit to an unauthorized Financial Watch program; 3) falsely accusing Plaintiff Achoe of

threatening contractors after a contractor took and unauthorized photographs of him; 4) denying Plaintiff's requests to travel by Amtrak or his personal vehicle because of a phobia of flying; 5) issuing Plaintiff Achoe a two year Letter of Reprimand for a minor insignificant conversation with his supervisor; 6) monitoring Plaintiff Achoe's telephone calls, meetings and conversations in the workplace; 7) arbitrarily lowering Plaintiff Achoe's performance evaluation in October 2016; 8) subjecting Plaintiff Achoe to a second investigation in February 2017 based on a false accusations about being disruptive in the workplace in an effort to justify his termination from employment; and 9) assigning Plaintiff Achoe to the supervision of Aimee Primeaux, and subjecting him to daily and weekly threats of discipline for each instance that he responded to false accusations about his performance and conduct

39.    As a result of such acts, Plaintiff has suffered damages.

## Prayer for Relief

Wherefore, Plaintiff prays as follows:

A.    Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 633a;

B.    Enjoin Defendant from discriminating against employees who report discriminatory practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.;

C.      Award Plaintiff damages, including back pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by the Defendant's discrimination and retaliation;

D.      Award payment of all fees, costs, expenses, including attorneys' fees and expert fees; and

E.      Award Plaintiff such other relief as to which he may be deemed entitled.

## **Jury Trial Demand**

Plaintiff demands a jury trial on all counts so triable.

Respectfully submitted,

_____*/s/*_____
David A. Branch #438764
Law Office of David A. Branch & Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com