# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT ACHOE**, | |
| Plaintiff, | |
| v. | Case No. 17-cv-02231 (CRC) |
| **JAY CLAYTON, CHAIRMAN, U.S. SECURITIES AND EXCHANGE COMMISSION**, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Securities and Exchange Commission ("SEC") employee Robert Achoe has sued the agency on various claims of discrimination, hostile work environment, and retaliation. The SEC moves to dismiss some of Achoe's claims for failure to exhaust his administrative remedies and the rest for failure to state a claim upon which relief can be granted. For reasons discussed below, the Court will grant the motion in part and deny it in part.

## I. Background

### A. <u>Factual Background</u>

As required on a motion to dismiss, the Court draws this factual background from the complaint, assuming the truth of all well-pled allegations. <u>See</u> <u>Sissel v. U.S. Dep't of Health & Human Servs.</u>, 760 F.3d 1, 4 (D.C. Cir. 2014). The agency of course disputes many of the allegations.

Achoe is an African-American man in his fifties. Compl. ¶ 4. He has been employed at the SEC since 2004. Id. ¶ 6. In November 2011, he transitioned from being an SK-12[1] Paralegal Specialist to an SK-12 Management and Program Analyst in the SEC's Continuity of Operations Program ("COOP"), within its Office of Security Services. Id.[2] Kelly Gibbs, a white woman, was Achoe's direct supervisor before she became the Chief of the Office of Security Services. Id.

Achoe was required to participate in a year-long "financial watch program" from 2013 to 2014 after a background investigation revealed a delinquent debt. Id. ¶ 7. In response, Achoe provided to Gibbs the notice of his loan modification but not the modification agreement itself, which Gibbs "demanded to see" as part of the program. Id. Because Gibbs could not produce an agency regulation or rule requiring disclosure, Achoe refused to comply. Id. After speaking with the then-Chief of Security Services, who admitted there was no such rule or regulation, Achoe provided the agreement to Gibbs. Id. As part of the program, Achoe provided proof of monthly loan payments and Gibbs conducted monthly credit inquiries which Achoe says negatively impacted his credit score. Id. According to Achoe, white employees (presumably those with bad credit) were not required to participate in the financial watch program. Id.

During a lunch break in 2014, Achoe took his daily medication for blood pressure and cholesterol, which can cause drowsiness, and briefly dozed off in his chair. Id. ¶ 8. When he

---

[1] The SEC uses an "SK" pay schedule rather than the "GS" schedule used elsewhere in the federal civil service.

[2] Although the Complaint lists bureaucratic-speak descriptions of his duties and responsibilities—*e.g.*, "identification of mission essential functions"; "stakeholder engagement/teamwork," id. ¶ 11—the parties unhelpfully do not provide a plain-English explanation of Achoe's actual job.

awoke, he noticed that an agency security contractor was taking his photograph. Id. Two contractors laughed at Achoe. Id. Achoe explained what had happened to the then-Chief of Security Services, who said he would speak to the Branch Chief. Id. Later, Achoe received a report that Gibbs "suggested to management officials that he threatened the contractors." Id.

Soon after starting to report to Gibbs, Achoe informed her that he has a fear of flying. Id. ¶ 9. Achoe routinely travels to SEC Regional Offices in Richmond, Virginia and Blueridge, Virginia. Id. Gibbs allegedly denied Achoe's request to take Amtrak or drive to these meetings because she "did not believe Plaintiff had a legitimate fear of flying." Id. Gibbs explained to Achoe that the cost to reimburse him for driving would exceed the cost of flying. Id. Achoe offered to waive reimbursement for any cost above airfare. Id. Achoe claims to know of "another SEC employee . . . who also has a fear of flying" who "uses Amtrak for longer distance official government travel." Id.

On June 25, 2015, Gibbs emailed Achoe a new position description ("PD") for a job as an SK-13 level Emergency Preparedness Specialist. Id. Allegedly after realizing that the position included a pay grade increase, Gibbs replaced that position "with a completely new rewritten [SK-12] Management and Program Analyst PD." Id. The SK-12 position requires a "TS/SCI" security clearance and entails complex responsibilities. Id. ¶¶ 10–14. However, it does not provide a possibility for advancement within the SEC. Id. ¶ 10. Achoe's colleagues are Security Specialists, which have lower-level responsibilities and security clearances but built-in pay grade promotions to SK-13 and a clear opportunity for advancement. Id.

In 2015, Tawana Harris, an African-American woman, began supervising Achoe and a white colleague. Id. ¶ 15. On February 18, 2016, Harris overheard Achoe having a phone conversation and asked to whom he was speaking. Id. ¶ 16. After Achoe identified the caller,

Harris told Achoe "in a sharp tone of voice" that there was no reason for Achoe to have this conversation, as she had previously informed him.  Id.  Achoe "[took] offense to Ms. Harris's tone of voice," but not the correction itself, and responded "in a firm voice": "I'm not your child."  Id.  Several colleagues overheard this exchange.  Id.  Harris and Achoe met with Gibbs to discuss the incident.  Id. ¶ 17.  Gibbs issued Achoe a letter of reprimand, which would stay in his record for up to two years, "for speaking loudly to his supervisor and being disruptive to the office."  Id.  Although Achoe told Gibbs that the letter mischaracterized the interaction with Harris, he "was advised that he could be terminated if the Agency determined that there was a similar incident within a year."  Id.

In August 2016, Achoe informed Harris that Gibbs and other employees and contractors were "monitoring" his phone calls and in-person meetings.  Id. ¶ 18.  A colleague told Achoe that he had seen this happen several times and had discussed this matter with Harris.  Id.

In October 2016, Harris prepared annual performance appraisals for Achoe and the white male whom she supervised and submitted the appraisals to Gibbs.  Id. ¶ 19.  Achoe claims that Gibbs then "arbitrarily lower[ed]" his evaluation but not the white male's.  Id.

In December 2016, Gibbs initiated a second investigation into Achoe and Harris based on false accusations of being disruptive in the workplace.  Id. ¶ 20.  Achoe was interviewed in February 2017 by the agency's Human Resources Department.  Id.  The SEC did not take further action on the matter.  Id.

In June 2017, Aimee Primeaux, a white woman, became Achoe and Harris's supervisor.  Id. ¶ 21.  Primeaux allegedly began harassing Achoe and Harris by threatening discipline for false instances of "misconduct and insubordination."  Id.

B.  Procedural Background

Achoe initiated contact with an agency Equal Employment Opportunity ("EEO") counselor on September 27, 2016.  Pl.'s Opp'n to Mot. to Dismiss ("Opp'n") Ex. B.  He filed a formal complaint of discrimination and hostile work environment with the SEC's Office of Equal Employment Opportunity ("OEEO") on November 21, 2016.  Def.'s Mot. to Dismiss ("MTD") Ex. 1, Final Agency Decision ("FAD"), at 2.  By letter dated December 28, 2016, OEEO accepted Achoe's hostile work environment claim for investigation and dismissed a retaliation claim.  Id.[3]  A copy of the Report of Investigation was transmitted to Achoe's representative on May 10, 2017.  Id. at 2.  The OEEO issued its FAD on July 18, 2017, finding that Achoe failed to prove that the SEC subjected him to a hostile work environment based on age, color, or race.  Id. at 14.

Achoe filed this Complaint on October 26, 2017.  See ECF No. 1.  He raises claims of discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–16, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

## II.  Legal Standards

A.  Rule 12(b)(6) standards

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678

---

[3]  The OEEO dismissed Achoe's retaliation claim because he did not allege that he engaged in protected activity; instead, Achoe alleged that he was interviewed by the SEC's Office of Inspector General on an unrelated matter that did not involve discrimination allegations.  Id. at 2 n.3.

(2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  To make this determination, the Court "must take all of the factual allegations in the complaint as true."  <u>Id.</u>  It also must "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  <u>Stewart v. Nat'l Educ. Ass'n</u>, 471 F.3d 169, 173 (D.C. Cir. 2006).  Finally, the Court may only "consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."  <u>Id.</u>  Here, therefore, the Court may consider: (1) the factual allegations made in Achoe's Complaint, (2) his informal and formal OEEO complaints, which are incorporated in his Complaint, and (3) the FAD, which is a public record subject to judicial notice.  <u>See</u> <u>Vasser v. McDonald</u>, 228 F. Supp. 3d 1, 10–11 (D.D.C. 2016).

B.  <u>Exhaustion of Administrative Remedies</u>

A federal employee must exhaust his administrative remedies before filing suit under Title VII or the ADEA.  <u>Bowden v. United States</u>, 106 F.3d 433, 437 (D.C. Cir. 1997); 42 U.S.C. § 2000e-16c (Title VII); 29 U.S.C. § 633a(b)-(d) (ADEA).  A plaintiff's purported failure to exhaust administrative remedies is an affirmative defense analyzed under Rule 12(b)(6) for failure to state a claim.  <u>See, e.g.</u>, <u>Scott v. Dist. Hosp. Partners, L.P.</u>, 60 F. Supp. 3d 156, 161 (D.D.C. 2014).  The defendant bears the burden of pleading and proving this affirmative defense.  <u>Bowden</u>, 106 F.3d at 437.

C.  <u>Substantive Law</u>

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from

6

retaliating against any employee who opposes an unlawful employment practice or participates in an employment discrimination proceeding, see id. § 2000e-3(a). Title VII also makes it unlawful for an employer to "requir[e] people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "Because the prohibition against age discrimination contained in the ADEA is similar to the prohibition against discrimination contained in Title VII, courts routinely analyze ADEA claims under the law developed under Title VII discrimination inquiries." Peyus v. Lahood, 919 F. Supp. 2d 93, 100 (D.D.C. 2013).

To plead a viable Title VII or ADEA discrimination claim, a plaintiff must allege that he suffered an "adverse employment action" because of his race, color, religion, sex, national origin, or age. Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). To plead unlawful retaliation, a plaintiff must allege that he suffered a "materially adverse action" because he engaged in a statutorily protected activity. Id. at 1199. Finally, to state a claim of hostile work environment, a plaintiff must allege "'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" Id. at 1201 (quoting Harris, 510 U.S. at 21).

### III. Analysis

Each of the three counts in Achoe's Complaint—discriminatory treatment and hostile work environment based on race and color under Title VII (Count I), retaliation under Title VII (Count II), and discriminatory treatment and hostile work environment based on age under the ADEA (Count III)—is supported by the same nine alleged discrete acts: (1) Gibbs placing him on the financial watch program; (2) Gibbs reporting that he "threatened" contractors; (3) Gibbs denying his request to take alternative transportation; (4) Gibbs reassigning him to the position

with more responsibilities but a lower pay grade and fewer advancement opportunities than colleagues; (5) Gibbs issuing him the letter of reprimand; (6) Gibbs closely monitoring him; (7) Gibbs lowering his annual performance appraisal but not that of a white colleague; (8) Gibbs initiating a second investigation into Achoe and Harris; and (9) Primeaux harassing and threatening him.

The SEC has moved to dismiss all three counts.

A. Exhaustion (Counts I and III)

As noted above, an individual must exhaust his administrative remedies before filing a Title VII or ADEA lawsuit in federal court. Bowden, 106 F.3d at 437. The SEC argues that Achoe failed to do so with respect to three alleged discrete acts: the October 2016 performance evaluation, the December 2016 investigation, and the 2017 harassment by Primeaux. Achoe did not specifically allege these discrete acts—which occurred after his initial contact with an EEO counselor in September 2016—during the administrative process. Even so, Achoe counters that these claims should proceed because they fall under the "reasonably related" exception to the exhaustion requirement, which allows a court to consider claims that are "like or reasonably related to" claims that were properly exhausted. See Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995). To be related in this manner, the claim "must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" Id. (citation omitted). In other words, there must be some "logical relationship" between the conduct described in Achoe's OEEO charge and the conduct absent from that charge but alleged in the Complaint. See Bartlette v. Hyatt Regency, 208 F. Supp. 3d 311, 326 (D.D.C. 2016).[4]

---

[4] It is an open question whether this exception still exists following the Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which rejected

*1. October 2016 lowered performance evaluation*

Achoe alleges that in October 2016, Gibbs "arbitrarily lower[ed]" his annual performance appraisal but not that of a white coworker. Compl. ¶ 19. He asserts that this lowered performance evaluation is "reasonably related" to his exhausted allegations because it is a "continuation of the Agency's attempts to falsely accuse [Achoe] of misconduct and target him for discipline." Opp'n at 10–11.

The relationship between a lowered performance evaluation and Achoe's fully exhausted claims—for example, denying his request for alternative transportation or placing him in the financial watch program—is simply too attenuated to be "reasonably related." The administrative investigation into entirely distinct supervisory actions could not reasonably have been expected to encompass a claim about a performance evaluation that arose after the informal complaint was filed. Achoe's response is to frame Gibbs as the "common thread" tying together almost every discrete act that he alleges. Id. at 11, 15. In essence, he maintains that so long as a common supervisor perpetrates a series of discrete acts, those acts are "reasonably related" for purposes of exhaustion. But it cannot be that a common actor is sufficient to stitch together otherwise factually unrelated workplace occurrences; such a broad rule would wear the exhaustion requirement too thin. Accordingly, the Court concludes that claims based on Achoe's lowered performance evaluation were not exhausted.

---

the continuing violation doctrine. See, e.g., Mount v. Johnson, 664 F. App'x 11 (D.C. Cir. 2016). The Court need not resolve that question, however, because two of the three acts clearly do not satisfy the reasonably related exception and even if the third might, Achoe has failed to state a claim based on that act in Counts I, II, and III.

### 2. *December 2016 investigation*

The same cannot be said for Achoe's allegation regarding the December 2016 investigation. In that month, according to Achoe, "Gibbs initiated a *second* investigation of Plaintiff Achoe and Ms. Harris, *again* falsely accusing them of being disruptive in the workplace." Compl. ¶ 20 (emphases added). Unlike the unrelated performance review, this discrete act plausibly is a continuation of Gibbs's earlier, similar conduct: her first investigation into disruptive conduct by Achoe and Harris that occurred in February 2016 and resulted in Achoe's letter of reprimand. See id. ¶ 16. The second investigation can also plausibly be seen as resulting from Gibbs's close monitoring of Achoe in August and September 2016. See id. ¶ 18. In other words, the December 2016 investigation could "reasonably be expected" to "arise from the administrative investigation" regarding the February 2016 investigation and what came of the informal instances of monitoring Achoe's workplace conduct. See Park, 71 F.3d at 907. Therefore, the December 2016 investigation is sufficiently related to Achoe's exhausted claims.

### 3. *2017 harassment*

Finally, the third act postdating the administrative proceedings lacks even Gibbs as a common thread. Achoe alleges that Primeaux began a campaign of harassment in the form of "disrespectful comments" and "false accusations" after she was designated as his and Harris's supervisor in June 2017. Compl. ¶ 21. But Achoe fails to articulate a logical relationship between this allegation regarding Primeaux, a supervisor not mentioned anywhere in the administrative proceedings, and the claims based on Gibbs's conduct. See Hunter v. District of Columbia, 797 F. Supp. 2d 86, 95 (D.D.C. 2011) (dismissing plaintiff's discrimination claims based on "new factual allegations separated in time" and "involv[ing] almost an entirely new set

of supervisors" from that alleged during administrative proceedings). Accordingly, the claims regarding Primeaux are insufficiently related to Achoe's exhausted claims.

In sum, Achoe's claims based on his lowered performance evaluation and harassment by Primeaux are not "reasonably related" to his exhausted claims, but his claims based on the second investigation are. Even so, for the reasons that follow, the Court concludes that Achoe fails to state a claim based on the December 2016 investigation in Counts I, II, or III.

B. Discriminatory Treatment (Counts I and III)

Whether he ultimately relies on direct or circumstantial evidence of discrimination, at the pleading stage "a plaintiff must allege an adverse employment action to make out a discrimination claim" under Title VII or the ADEA. Cooper v. Nielsen, 298 F. Supp. 3d 197, 203 (D.D.C. 2018) (citing Baloch, 550 F.3d at 1196).[5] "[N]ot everything that makes an employee unhappy is an actionable adverse action," however. Baird v. Gotbaum, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (citation omitted). To qualify, there must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Id. at 1248 (citation omitted). "When a Title VII plaintiff rests a claim of adverse employment action on an

---

[5] The SEC initially asserted that at the motion to dismiss stage, Achoe must establish a *prima facie* case of discrimination. See MTD at 12–14. This is not the case, as the agency eventually acknowledged with respect to Achoe's hostile work environment claim. Def.'s Am. Reply at 11. While the agency initially proposed too high a standard, Achoe suggested one too low. He maintains that at this stage, "all a complaint need[s] [to] state is: 'I was turned down for a job because of my race.'" Opp'n at 13 (alterations in original) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000)). Achoe's reliance on Sparrow and Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), is misplaced following the Supreme Court's decisions in Twombly and Iqbal. See McManus v. Kelly, 246 F. Supp. 3d 103, 111 (D.D.C. 2017) (listing cases that have concluded "that the Sparrow pleading standard is no longer controlling").

event that does not involve loss of pay or benefits, the relevant question is whether the employment action resulted in 'materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.'" Moore v. Castro, 192 F. Supp. 3d 18, 41 (D.D.C. 2016) (quoting Youssef v. FBI, 687 F.3d 397, 401 (D.C. Cir. 2012)).

As found above, Achoe has alleged seven exhausted discrete acts of discrimination. The Court concludes that of the seven, three plausibly constitute adverse employment actions.

### 1. *The financial watch program*

Achoe maintains that being placed on the financial watch program negatively affected his credit and asserts that "[a]n employer action that adversely affected the employee's finances is an adverse action." Opp'n at 19; see also Compl. ¶ 7. This assertion sweeps too broadly. Although he alleges a harm (assuming that a lowered credit score had some tangible financial impact) that was technically caused by something that happened at work, he has not alleged a *work-related* harm. Consider the following two hypotheticals. In the first, an employer changes an employee's shift from days to nights and, as a result, the employee must now spend money on childcare. That change is an employer action that adversely affected the employee's finances. But, assuming the two shifts are otherwise equivalent, it is not an adverse action for purposes of Title VII. In the second, an employer changes an employee's shift from days to nights and, as a result, the employee earns less because the night shift's hourly wage is lower. That change is an employer action that adversely affected the employee's *work-related* finances and therefore would be actionable. Bell v. Gonzales, 398 F. Supp. 2d 78 (D.D.C. 2005), on which Achoe relies, mirrors the second scenario because the plaintiff there lost the opportunity to earn

overtime pay—in other words, a work-related financial loss. By contrast, any harm Achoe

suffered from a lowered credit score is not work-related.

### 2. *The photograph and Gibbs's response*

The SEC asserts that Achoe "can point to no objectively tangible work-related

harm . . . from having his photo taken while sleeping in his office." MTD at 13. True, but

Achoe counters that this mischaracterizes his claim. According to Achoe, the adverse action

arising from this incident is not the contractors taking his photograph without his permission but

Gibbs taking advantage of the interaction to misrepresent to management that Achoe had

threatened the contractors. See Opp'n at 18. Even so, Achoe fails to allege any objectively

tangible work-related harm that came from any such misrepresentation, such as termination or

transfer.

### 3. *The request to travel by car or Amtrak*

Achoe asserts that Gibbs's denial of his request to use alternative forms of transportation

to accommodate his fear of flying constitutes an adverse employment action. The SEC faults

Achoe for not expressly stating in his Complaint that he has been *forced* to travel by plane. Am.

Reply at 6. But the Court is not to be so parsimonious on a motion to dismiss. Achoe has

alleged: he fears flying because of his medical conditions; he routinely travels to Richmond and

Blueridge, Virginia for work; his program requires team members to interact with Regional

Offices throughout the country; Gibbs denied his request to take Amtrak or drive to meetings

even though he offered to waive reimbursement; and another employee who fears flying is

allowed to take Amtrak. Compl. ¶ 9. Making all inferences in Achoe's favor and reading his

allegations in the context of his race discrimination claim, it is reasonable to infer that Achoe, but

not a white employee, has been made to travel in a way that he fears due to health reasons.

Requiring someone to do something he cannot do because of his reported phobia plausibly

constitutes an objectively tangible work-related harm related to the conditions of his employment

and thus, an adverse employment action.

### 4. The change in his position description ("PD")

Achoe next asserts that he suffered an adverse employment action when Gibbs replaced

his PD with a "completely new rewritten" one specifically drafted to limit his promotion

potential while others' PDs included such potential with fewer responsibilities. Compl. ¶ 10.

"[P]reventing an employee from receiving a promotion" or "interfering with the upward

classification of a position" can constitute adverse employment actions. Perry v. Donovan, 733

F. Supp. 2d 114, 119 (D.D.C. 2010) (citations omitted). Although the pleadings and materials

subject to judicial notice are somewhat confusing with respect to the sequence of events

regarding Achoe's new PD, based on the allegations in his Complaint, Achoe has plausibly

alleged that Gibbs interfered with his potential to receive a promotion by replacing his SK-13

position with a new SK-12 one.[6]

### 5. The letter of reprimand

Achoe received a letter of reprimand in February 2016 for being disruptive in the

workplace after telling Harris, "I'm not your child." Compl. ¶ 17. He contends that this letter

constitutes an adverse action because it allegedly placed him "in jeopardy of termination" if a

---

[6] For instance, contrary to Achoe's contention that Gibbs drafted a completely new SK-12 PD, the FAD cites the testimony of a Supervisory Human Resources Specialist that Achoe's current PD "was written in August 2013, and was not rewritten in 2015." FAD at 6. A motion to dismiss is not the time to resolve all tensions in the record, however, so the Court will take Achoe's allegations regarding the PD as they are.

similar incident occurred within the year.  Opp'n at 17–18 (citing <u>Taylor v. Mills</u>, 892 F. Supp. 2d 124, 149 (D.D.C. 2012)); Compl. ¶ 17.

"[R]un-of-the-mine" letters of reprimand generally do not constitute adverse employment actions.  <u>See</u> <u>Herbert v. Architect of Capitol</u>, 839 F. Supp. 2d 284, 302–04 (D.D.C. 2012); <u>see also</u> <u>id.</u> at 303 (listing cases in which courts in this district have found letters of reprimand insufficient to constitute a materially adverse action for purposes of a retaliation claim, a less stringent standard than that for an adverse employment action for purposes of a discrimination claim); <u>Nurridin v. Goldin</u>, 382 F. Supp. 2d 79, 94 (D.D.C. 2005) (concluding, on summary judgment, that letter of reprimand did not constitute adverse employment action where letter included "mere scolding" but did not lead to "any disciplinary action" (citation omitted)).  This has been the case even where, as here, the individual was warned that the letter would be placed in his official personnel file for a period of time and could lead to more severe disciplinary action should there be future misconduct during that period.  <u>Herbert</u>, 839 F. Supp. 2d at 302 (describing letter of reprimand considered, but not quoted in, <u>Baloch v. Kempthorne</u>, 550 F.3d 1191 (D.C. Cir. 2008)).  In addition, the letter of reprimand at issue in <u>Baloch</u> proceeded "over the course of five single-spaced pages, to castigate the employee in exhaustive detail."  <u>Id.</u>  Still, because that letter "contained no abusive language, but rather job-related criticism," the D.C. Circuit concluded that it was not materially adverse for purposes of the plaintiff's retaliation claim.  <u>Id.</u> (citing <u>Baloch</u>, 550 F.3d at 1199).

Even so, the Court is aware of no categorical prohibition on a letter of reprimand constituting an adverse action as a matter of law.  Perhaps for that reason, the cases cited above considered letters of reprimand at the summary judgment phase.  Here, by contrast, the Court does not have the benefit of having the actual letter or the specific facts and circumstances

surrounding its issuance or its impact, if any, on Achoe's future prospects. Accordingly, the Court will take Achoe's allegations regarding the letter of reprimand as true and, in an abundance of caution, deny the agency's motion to dismiss with respect to Achoe's discrimination claim based on the letter. The Court will revisit the issue at summary judgment if necessary.

### 6. *Being closely monitored*

Next, Achoe alleges that a colleague informed him that management, employees, and contractors were monitoring his phone and in-person meetings. Compl. ¶ 18. It is well-established, however, that close supervision does not constitute an adverse employment action that supports a claim under Title VII or the ADEA. See Lester v. Natsios, 290 F. Supp. 2d 11, 30 (D.D.C. 2003) (listing cases).

### 7. *The second investigation into Achoe and Harris*

Finally, assuming this claim was properly exhausted, Achoe alleges that Gibbs initiated a second investigation of himself and Harris, "again falsely accusing them of being disruptive in the workplace." Compl. ¶ 20. Even though he alleges that he was interviewed by the agency's Human Resources department under threat of discipline, he does not allege that he was in fact disciplined in any way and even acknowledges that the agency "failed to take any further action." Id. An investigation that does not lead to objectively tangible harm is not an adverse action. See Runkle v. Gonzales, 391 F. Supp. 2d 210, 226–27 (D.D.C. 2005) ("The fact that the plaintiff was subject to an investigation does not amount to an adverse action because 'mere investigations by [an] employer . . . have no adverse effect on plaintiff's employment.'" (alterations in original) (quoting Mack v. Strauss, 134 F. Supp. 2d 103, 114 (D.D.C. 2001)). Because nothing came of this investigation, it does not constitute an adverse action.

In sum, Achoe has plausibly alleged three discrete acts as adverse employment actions to support his claims of discriminatory treatment in Counts I and III: the denial of his request for alternative transportation; the revocation of an SK-13 PD for a completely new SK-12 PD; and the letter of reprimand. The Court naturally takes no position on whether Achoe will be able to adduce sufficient evidence in discovery to survive a motion for summary judgment on these claims.

C.  Hostile Work Environment (Counts I and III)

For purposes of Title VII and the ADEA, a hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21 (citation omitted).  To determine whether such an environment exists, the Court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23.  This standard is demanding as Title VII is not intended to function as a "general civility code" policing "the ordinary tribulations of the workplace." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citations omitted).  Thus, "[c]onduct must be extreme." Id.

Even assuming Achoe exhausted all of his claims,[7] Achoe's laundry list of alleged workplace incidents is neither pervasive nor severe enough to plausibly state a hostile work

_____

[7]  The standard for exhaustion for hostile work environment claims is "more lenient" than that for discrete acts of discrimination.  See Wilson v. Clayton, 272 F. Supp. 3d 25, 32 (D.D.C. 2017).

environment claim.  The alleged incidents occurred intermittently over a period of four years, suggesting "less a pervasive pattern of harassment, and more just isolated employment incidents occurring over a long period of time."  Nurridin, 382 F. Supp. 2d at 108.  Nor do they suggest a particularly "severe" or "extreme" environment within the meaning of Title VII.  Achoe relies largely on incidents of allegedly discriminatory performance-based actions like a letter of reprimand based on unfair criticism, a lowered performance evaluation, close monitoring of his work activities, lack of advancement opportunities, and a baseless investigation.  In general, however, "[t]he ordinary work-related activities of a supervisor . . . are not sufficiently severe or abusive to constitute objective harassment."  Uzoukwu v. Metro. Wash. COG, 130 F. Supp. 3d 403, 415 (D.D.C. 2015) (citing Swann v. Office of Architect of Capitol, 73 F. Supp. 3d 20, 32 (D.D.C. 2014)); see also, e.g., Outlaw v. Johnson, 49 F. Supp. 3d 88, 92 (D.D.C. 2014) (dismissing hostile work environment claim where plaintiff alleged "promotion denials, a subjective performance review, and being hired at a lower grade than Caucasian employees"); Nurridin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile work environment claim where plaintiff alleged "removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management").  Achoe's allegations regarding Primeaux do not provide the something "more" that courts require; although he claims she harassed and threatened him, he does not connect in any way those vague allegations to his race, color, or age.  See Bryant v. Brownlee, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) ("Despite the sheer number of incidents of which plaintiff complains, her claim of a discriminatory hostile work environment contains at least one glaring defect: none of the allegations give rise to an inference of discrimination by defendant based on race, color, or age.").

Achoe's remaining allegations—that Gibbs denied his request to avoid flying and mischaracterized his response to the contractors who took a picture of him asleep at his desk— cannot transform an unpleasant environment into an actionable one. And even if Gibbs may be seen as a "common thread" between many of the workplace incidents identified by Achoe, Opp'n at 15, it is not the (lack of) cohesion of the incidents that dooms his hostile work environment claim. It is the lack of severity.

Accordingly, the Court will dismiss Achoe's hostile work environment claims in Counts I and III.

D. Retaliation (Count II)

To state a claim of unlawful retaliation under Title VII, a plaintiff must allege that his employer took a materially adverse action against him because he had engaged in statutorily protected activity. Battle v. Master Sec. Co., LLC, 298 F. Supp. 3d 250, 252 (D.D.C. 2018). Achoe's complaint includes only a conclusory "he complained about discrimination." Compl. ¶ 33. His opposition brief fills in the details, explaining that Achoe complained about discrimination twice: (1) he indicated to Gibbs that he felt "singled out" when placed on a financial watch program and (2) he participated in the OEEO process in the fall of 2016. Opp'n at 19–20. Even fleshed out, these allegations do not constitute protected activities.

Expressing workplace concerns, even in an informal manner, may constitute protected activity. See Battle, 298 F. Supp. 3d at 253. But those expressions must make *some* reference to discrimination that would be unlawful under Title VII. Id. (dismissing unlawful retaliation claim where plaintiff alleged he "expressed concerns internally about the company's 'wrongful procedures'" but "neither statement reference[d] any discrimination that would be unlawful under Title VII" and so "neither amount[ed] to protected activity"); see also Williams v. Spencer,

883 F. Supp. 2d 165, 177 (D.D.C. 2012) ("[N]ot every employee's complaint receives protection under Title VII; the complaint must in some way allege unlawful discrimination."). Here, Achoe alleges only that he requested to see the regulation or policy authorizing Gibbs to review his loan modification agreement and other financial information. Compl. ¶ 7. He requested the same when he and Gibbs discussed the matter with the Chief of Security Services. Id. Although he alleges that Gibbs "singled [him] out for discriminatory treatment as an African American male by requiring him to submit to a Financial Watch program," id., he makes no allegation that he communicated or even implied to these superiors his concern that they were requesting his financial information *because of* his race or color. Thus, he has not plausibly alleged that his internal communications regarding the financial watch plan constituted protected activity.

And, while filing a complaint regarding employment discrimination is quintessential protected activity, see Battle, 298 F. Supp. 3d at 253, the timing of Achoe's OEEO process means this protected activity covers only claims arising at the earliest in September 2016, after he filed his informal complaint. What does this leave as potential materially adverse actions taken in response to the complaint? The lowered performance evaluation in October 2016, the second investigation in December 2016, and the harassment by a new supervisor in 2017. As found above, two of these three acts were not exhausted and are thus not properly considered here. And as for the third, as found above, the December 2016 investigation does not constitute a materially adverse employment action. Thus, Achoe has not plausibly stated a claim for unlawful retaliation in violation of Title VII based on his OEEO complaint.

Accordingly, the Court will also dismiss Count II.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss in part and deny it in part. A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: September 13, 2018