## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ROBERT ACHOE**,

Plaintiff,

v.

**JAY CLAYTON, CHAIRMAN, U.S. SECURITIES AND EXCHANGE COMMISSION**,

Defendant.

Case No. 17-cv-2231 (CRC)

## <u>MEMORANDUM OPINION</u>

Plaintiff Robert Achoe works in the area of the Securities and Exchange Commission ("SEC") charged with ensuring that the Commission can continue to perform its essential functions during unforeseen emergencies. That critical mission has taken on even greater significance during the ongoing COVID-19 pandemic. Yet Mr. Achoe claims the SEC has not always valued his contributions to the agency as highly as his role demands.

Achoe acted on his displeasure in 2017 by suing the Commission for race and age discrimination, as well as retaliation, based on a slew of grievances against one of his supervisors. The Court dismissed most of Achoe's claims in a previous ruling. What remains are discrimination claims stemming from three alleged adverse employment actions: (1) a letter of reprimand that Achoe received following a verbal spat with his supervisor; (2) his supervisor's denial of his request to take alternative transportation to a meeting in Chicago due to his fear of flying; and (3) a change in his position description that Achoe says lowered his pay grade and stymied his career advancement. The parties have completed discovery and the SEC now moves for summary judgment. Finding that Achoe has not shown that he suffered any cognizable

adverse employment action, and therefore that he has not established a *prima facie* case of discrimination, the Court will grant the SEC's motion and dismiss the case.

## I.   Background

Achoe, an African-American in his fifties, has worked for the SEC since 2004.  Pl.'s Opp'n to Mot. for Summ. J. ("Opp'n") Ex. M, EEO Counselor's Rep. 1.  In March 2012, Achoe transferred from the Commission's Division of Enforcement, where he had been a paralegal, to its Continuity of Operations Program ("COOP"), which coordinates the agency's emergency preparedness efforts.  Def. Mot. for Summ. J ("Mot.") Ex. 7, March 3, 2012 SF-50.  Achoe's job title was (and remains) Management and Program Analyst.  Opp'n 1.  Kelly Gibbs, a white woman, was Achoe's direct supervisor until July 2015.  After Gibbs was promoted, she became his second-level supervisor, Mot. Ex. 5, EEO Aff. of Kelly Gibbs ¶ 3, and Tawana Harris, an African-American woman, began supervising Achoe directly, Compl. ¶ 15.[1]

In September 2016, Achoe contacted an SEC Equal Employment Opportunity ("EEO") counselor to complain about various instances of perceived mistreatment by Ms. Gibbs.  Opp'n Ex. M, EEO Counselor's Rep. 1.  He subsequently filed a formal complaint with the SEC's Office of Equal Employment Opportunity ("OEEO").  Opp'n Ex. N, EEO Compl 2.  OEEO construed Achoe's complaint as presenting claims of hostile work environment and retaliation, accepting the former for investigation but dismissing the latter.  Def.'s Mot. to Dismiss ("MTD")

---

[1] The Court draws the facts from the Defendant's Statement of Material Facts Not in Genuine Dispute, other evidentiary exhibits filed by the parties (except where disputed by Plaintiff), and, in a few instances, Plaintiff's Complaint (where the facts are assumed by both parties).  See Local Rule 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

Ex. 1, Final Agency Decision ("FAD") 2.  During the ensuing investigation, OEEO gathered the affidavits of several SEC employees, including Gibbs and Michael Shepler, Supervisory Human Resource Specialist in the SEC's Office of Human Resources, Opp'n Ex. A, Gibbs EEO Aff.; Opp'n Ex. O, Shepler EEO Aff.  OEEO issued its Final Agency Decision in July 2017, concluding that Achoe failed to prove that the SEC subjected him to a hostile work environment. FAD at 14.  Achoe filed this suit three months later.

Achoe's complaint raised claims of discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.  In September 2018, the Court dismissed most of Achoe's claims for either failure to exhaust administrative remedies or failure to allege an adverse employment action.  See Achoe v. Clayton ("Achoe I"), No. 17-CV-02231 (CRC), 2018 WL 4374926, at *8 (D.D.C. Sept. 13, 2018).  The two surviving claims are for discriminatory treatment based on race under Title VII (Count I) and discriminatory treatment based on age under the ADEA (Count III).  Both are supported by the same three discrete acts noted above: (1) a letter of reprimand; (2) the denial of Achoe's request to take alternative transportation to a meeting in Chicago; and (3) a change in his position description.  The Court will recount the facts surrounding each of these incidents in the Analysis section below.

Discovery complete, the SEC has moved for summary judgment.  The sole ground for the motion is that Achoe has failed to establish that any of the discrete acts noted above constituted an adverse employment action as required to make out a *prima facie* case of employment discrimination under the relevant statutes.

## II.   Summary Judgment Standards

Courts must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of a factual dispute is insufficient to bar summary judgment.  Rather, the dispute must pertain to a "material" fact.  Id.  Said otherwise, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Additionally, the factual dispute must be "genuine," meaning that there must be sufficient evidence in the record, taken as a whole, that could lead "a rational trier of fact to find for the summary judgment nonmovant."  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citations omitted).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1).  Where the nonmovant would bear the burden of proof on a dispositive issue at trial, then at the summary judgment stage he bears the burden of producing specific facts showing that there is a genuine dispute requiring trial.  See Ricci, 557 U.S. at 586.  The party opposing summary judgment "cannot create a material fact by reliance on conclusory allegations or bare denials."  Liberty Lobby, 477 U.S. at 256.

In assessing a motion for summary judgment, the Court may not make credibility determinations or weigh the evidence but must instead view the facts and draw reasonable inferences in the light most favorable to the non-moving party.  Id. at 255.  Ultimately, the

Court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts."  Bias v. Advantage Int'l, Inc., 905 F.2d 1558, 1561 (D.C. Cir. 1990) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249–50 (internal citations omitted).

## III.  Analysis

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The ADEA bars identical discrimination "because of [an] individual's age." 29 U.S.C. § 623(a)(1). Because of the similarity between the two statutes, "courts routinely analyze ADEA claims under the law developed under Title VII discrimination inquiries."  Peyus v. Lahood, 919 F. Supp. 2d 93, 100 (D.D.C. 2013).   Thus, to allege a *prima facie* case of discrimination under either statute, "a plaintiff must show that he 'is a member of a protected class,' that he 'suffered an adverse employment action,' and that 'the unfavorable action gives rise to an inference of discrimination.'"  Youssef v. F.B.I., 687 F.3d 397, 401 (D.C. Cir. 2012) (quoting Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002)).

The government maintains that Achoe has not made that showing.  There is no dispute that Achoe is a member of a protected class.  The issue here is the second requirement of the *prima facie* case: whether he suffered a materially adverse employment action.  For purposes of Title VII and ADEA discrimination claims, an adverse employment action is "a significant

change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing significant change in

benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  "An employee must

experience[] materially adverse consequences affecting the terms, conditions, or privileges of

employment or future employment opportunities such that a reasonable trier of fact could find

objectively tangible harm." Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal

quotation marks and citations omitted).  "Prohibited discrimination, in other words, is not rigidly

confined to hirings, firings, promotions, or other discrete incidents." Niskey v. Kelly, 859 F.3d

1, 8 (D.C. Cir. 2017) (internal quotation marks and citations omitted).  However, "[n]ot

everything that makes an employee unhappy is an actionable adverse action." Baird v. Gotbaum,

662 F.3d 1246, 1250 (D.C. Cir. 2011) ((internal quotation marks and citations omitted).

As noted above, Achoe's remaining claims rest on three purported adverse employment

actions taken by the SEC: (1) the issuance of a letter of reprimand; (2) the denial of Achoe's

request to take alternative transportation to Chicago for a meeting; and (3) a July 2015 change to

his position description.  The Court takes each in turn.

A.  Letter of Reprimand

In February 2016, Achoe's direct supervision, Tawana Harris, overheard Achoe

conducting what she felt was an inappropriate phone conversation and admonished him about his

behavior.  Opp'n Ex. B, Pl.'s Resp. to Def.'s First Set of Interrogs. ¶ 1.  Achoe took offense and

responded to Harris emphatically.[2]  Mot. Ex. 1., March 2, 2016 Letter of Reprimand ("LOR") 1;

---

[2] Although the letter of reprimand that Achoe received as a result of the incident states that he "yelled" at Harris, Achoe insists that he merely used a "firm voice."  Opp'n Ex. B, Pl.'s Resp. to Def.'s First Set of Interrogs. ¶ 1.  Ultimately, this dispute is not material.

Opp'n Ex. B, Pl.'s Resp. to Def.'s First Set of Interrogs. ¶ 1.  After other SEC employees

brought the incident to Ms. Gibbs' attention, Harris and Achoe met with Gibbs to discuss what

had happened.  Mot. Ex. 1., LOR 1; Opp'n Ex. B, Pl.'s Resp. to Def.'s First Set of Interrogs. ¶ 1.

Achoe later apologized.  Mot. Ex. 1, LOR 1.

   As a result of this incident, Gibbs issued Achoe a Letter of Reprimand for disrupting the

workplace.  Mot. Statement of Undisputed Material Facts ("SUMF") ¶ 1.  The letter stated:

> You must conduct yourself professionally and appropriately in the workplace at all
> times.  Yelling at your supervisor and causing a workplace disruption is
> inappropriate and will not be tolerated.  Your actions are further aggravated by the
> fact that you are a security specialist. If you engage in the same or similar
> misconduct again you may be subject to additional disciplinary action up to and
> including removal from federal service.

Mot. Ex. 1, LOR 1.  The LOR indicated that it was to remain in Achoe's personnel file for up to

two years, but Gibbs later informed Achoe that it would be automatically removed from his file

after only a year, SUMF ¶ 2; Mot. Ex. 2, March 3, 2016 Email.  In the end, Gibbs had the LOR

removed from Achoe's personnel file six months after it was issued.  SUMF ¶ 3; Mot. Ex. 3,

Sept. 7, 2016 Email.  Achoe admits that he suffered no monetary harm from having received the

LOR, and in fact was awarded a merit pay increase of over $3000 early the following year.

SUMF ¶¶ 4–5; Opp'n Ex. G, Pl.'s Resp. to Reqs. for Admis. ¶¶ 11–13.  He also acknowledges

that during the time that the LOR remained in his personnel file, he did not apply for any

positions or promotions.  SUMF ¶¶ 6–7; Opp'n. Ex. G, Pl.'s Responses to Reqs. for Admis. ¶ 12.

Achoe nonetheless maintains that the LOR constituted an adverse employment action because it

placed him under "the constant strain of potential termination."  Opp'n 16.

   At the motion to dismiss stage, the Court noted that "[r]un-of-the-mine letters of

reprimand generally do not constitute adverse employment actions."  Achoe I, 2018 WL

4374926, at *7 (internal quotation marks omitted).  But since the actual LOR was not in the

record, the Court opted to preserve the issue for resolution on summary judgment.  Id.  Now with a more-fully developed record, the Court concludes that issuance of the LOR did not constitute an adverse employment action.   "[A] reprimand itself is not an actionable adverse employment action under Title VII."  Green v. Johnson, 208 F. Supp. 3d 307, 310 (D.D.C. 2016) (Cooper, J.), aff'd sub nom. Green v. Nielsen, No. 16-5295, 2018 WL 1391714 (D.C. Cir. Mar. 1, 2018). Rather, a reprimand rises to the level of an adverse action only when it carries a "materially adverse consequence[] affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Douglas, 559 F.3d at 552 (citation omitted).  A letter of reprimand that is "not abusive in tone or language or a predicate for a more tangible form of adverse action, will rarely constitute adverse action."  Herbert v. Architect of the Capitol, 839 F. Supp. 2d 284, 302 (D.D.C. 2012) (quoting Hyson v. Architect of Capitol, 802 F. Supp. 2d 84, 102 (D.C. Cir. 2011)); see id. (gathering cases in this district finding letters of reprimand insufficient to constitute a materially adverse action even under the more lenient standard for adverse actions in retaliation claims).

Here, the LOR simply admonished Achoe for "causing a disruption to the workplace" by "[y]elling at [his] supervisor" and warned him that similar behavior would not be tolerated.  It is not at all abusive.  See Mot. Ex. 1, LOR 1–2.  Indeed, the tenor of the letter is far more restrained than the one at issue in Baloch v. Kempthorne, 550 F.3d 1191 (D.C. Cir. 2008), which the D.C. Circuit held not to be a materially adverse employment action, id. at 1199; see Herbert, 802 F. Supp. 2d at 302–03 (noting that the Baloch letter "castigate[d] the employee in exhaustive detail" but was nevertheless not adverse because it "contained no abusive language").

Nor was the LOR a predicate for a more tangible form of adverse action.  Although Achoe was warned that the letter would remain in his personnel file for a year and that similar

misconduct could lead to further sanctions including termination, the mere possibility of further

discipline is not an "objectively tangible harm," <u>Douglas</u>, 559 F.3d at 552; <u>see also</u> <u>Durant v.</u>

<u>D.C. Gov't</u>, 875 F.3d 685, 698 (D.C. Cir. 2017) (holding that a letter of reprimand that "warn[ed]

[the plaintiff] that future violations w[ould] result in corrective or adverse action" did not

constitute a materially adverse action for purposes of a retaliation claim).

Accordingly, Achoe has not shown that issuance of the letter of reprimand was an

adverse employment action for purposes of his Title VII and ADEA discrimination claims.

B.  <u>Denial of Request to Use Alternative Transportation</u>

In summer 2016, Achoe was scheduled to travel from Washington to Chicago for work.

Mot. Ex. 6, June 23, 2016 Email.  Because he feared flying, Achoe requested to drive or take

Amtrak instead.  SUMF ¶ 8.  Gibbs denied Achoe's request, however, due to concerns about the

cost of reimbursing Achoe's mileage if he drove and the travel time that would be required for

either alternative.  Mot. Ex. 6, June 23, 2016 Email.  As a result, another SEC employee flew to

Chicago in Achoe's place.  SUMF ¶ 10.

At the motion to dismiss stage, Achoe contended that "Ms. Gibbs forced [him] to fly for

business travel even though [she] knew of Plaintiff Achoe's fear of flying."  Pl. Opp'n to Mot. to

Dismiss 16.  Finding that "[r]equiring someone to do something he cannot do because of his

reported phobia plausibly constitutes an objectively tangible work-related harm related to the

conditions of his employment," the Court held that Achoe had sufficiently alleged an adverse

employment action.  <u>Achoe I</u>, 2018 WL 4374926, at *6.

 Achoe now concedes that "Ms. Gibbs never forced [him] to fly anywhere during her

tenure as [his] supervisor."  Opp'n Ex. G, Pl.'s Resps. to Reqs. for Admis. ¶ 9.  Although Achoe

is regularly required to travel to Richmond and Blue Ridge, Virginia in connection with his

work, he admits that he drives to both locations.  Id. ¶ 8.  Having abandoned his claim that he has

been forced to fly, Achoe now contends that the denial of his request constituted an adverse

employment action.  Opp'n 16.  He advances two supporting arguments.  First, he maintains that

not permitting him to take alternative transportation deprived him of a "bargained for"

employment condition.  See Strothers v. City of Laurel, 895 F.3d 317, 331–32 (4th Cir. 2018)

(finding a genuine dispute of material fact whether the plaintiff suffered discrimination because

the record "clearly show[ed]" that the employer denied the employee an agreed-upon

employment condition).  Second, Achoe argues that he has "been denied the resources to

perform his duties" because he lost "the meaningful opportunity to attend work functions outside

of the Washington, D.C. metro area."  Opp'n 17.

   As to his first argument, Achoe identifies no evidence of an agreement between him and

the agency permitting him to use alternative forms of business transportation.  He therefore fails

to identify any "bargained for" employment condition that the agency could have breached.

   His second argument fares no better.  Generally, an allegation that a plaintiff has been

denied resources "do[es] not give rise to a discrimination claim under Title VII."  Walker v.

D.C., 279 F. Supp. 3d 246, 262 (D.D.C. 2017) (quoting Rattigan v. Gonzales, 503 F. Supp. 2d

56, 73 (D.D.C. 2007)).  Here, the record shows that the only "resource" Achoe was even

arguably denied was the chance to attend a single, unidentified work event in Chicago.  There is

no evidence —and Achoe does not even allege—that the SEC has denied any other requests he

has made for alternative travel arrangements.  Nor does Achoe suggest why attending the

Chicago function, whatever it was, was important to the performance of his duties.  "[T]he denial

of a single training or travel opportunity does not constitute an adverse employment action unless

the plaintiff can tie the alleged discriminatory employment action to some actual, tangible

adverse employment consequence." Doe v. Gates, 828 F. Supp. 2d 266, 270 (D.D.C. 2011)

(quoting Edwards v. EPA, 456 F. Supp. 2d 72, 85 (D.D.C. 2006)).  Because Achoe presents no

evidence showing that his inability to drive or take the train to Chicago had some tangible

negative consequence—indeed, he has never even explained what the event was—he has failed

establish an adverse employment action as required to make out a *prima facie* case of

discrimination.

     C.  Change in Position Description

     The last remaining adverse action that Mr. Achoe alleges he suffered involves a change

made to his position description in July 2015.  Achoe claims that the change resulted in his

demotion and the loss of a "career ladder" advancement opportunity.  There is no dispute that

demoting or "[p]reventing an employee from receiving a promotion" can constitute an adverse

employment action.  Perry v. Donovan, 733 F. Supp. 2d 114, 119 (D.D.C. 2010) (internal

citations omitted).  The question, however, is whether the record evidence raises a genuine

factual dispute as to whether the July 2015 PD assignment deprived Achoe of any job status or

advancement opportunity.  The surrounding narrative requires a bit of unraveling.

     According to the undisputed testimony of the SEC's former Director of Human

Resources, the agency tries to ensure that every employee operates under a current position

description ("PD") setting forth the employee's job duties and "SK" pay level.[3]  Mot. Ex. 17,

Lacey Dingman Depo. Trans. 23:09–24:02.  In March 2012, when Achoe transferred from the

SEC's Division of Enforcement to its Continuity of Operations Program ("COOP"), his job titled

---

[3] Unlike other parts of the federal civil service, the SEC uses an "SK" pay schedule rather than the "GS" schedule.

changed from Paralegal Specialist to Management and Program Analyst. [4]  Mot. Ex. 7, March 21, 2012 SF-50.  That new position was formally assigned to Achoe through a "Notification of Personnel Action" form—or "SF-50"—issued on March 21, 2012.  This SF-50, numbered SEC478S, classified Achoe's new position as Series 343, at an SK-12 pay level.  Id.  It further specified that the "position is at the full performance level or band," id., meaning that Achoe could not progress beyond the SK-12 level unless the agency reclassified his position.  Opp'n Ex. O, Shepler EEO Aff. ¶¶ 9, 11; Mot. Ex. 8, Decl. of Michael Shepler 1.

Kelly Gibbs stated in her EEO affidavit that Achoe's PD was updated in August 2013 to reflect an expansion of his duties in the COOP.  Opp'n Ex. A, Gibbs EEO Aff. ¶ 33.  Consistent with Gibbs' recollection, Mr. Shepler, a supervisor in the SEC's Office of Human Resources, attests that he drafted a PD for a Management and Program Analyst position along with a supervisor in Achoe's chain of command, Cedric Drawhorn.  Opp'n Ex. O, Shepler EEO Aff. ¶¶ 8–9.  The government has produced a copy of that PD.  Mot. Ex. 9, August 2013 PD.  It is numbered 0810X00 and classifies the position as Management and Program Analyst, Series 0343, with a full performance level of SK-12—the same job title and grade level reflected in the SF-50 that implemented Achoe's initial assignment to the COOP in March 2012.  The August 2013 PD is indeed signed by Shepler and Drawhorn, but it does not indicate that it was assigned to Mr. Achoe specifically.  Id.  The Government maintains that the PD was meant to encompass Achoe's COOP duties but acknowledges that, for some unknown reason, it was not formally assigned to Achoe at the time through an implementing SF-50.

---

[4] Achoe asserts that this change occurred in November 2011, Opp'n 2, but offers no support for that position.  Ultimately, however, whether it was in November 2011 or March 2012 is immaterial.

The record reveals that in the summer of 2015 Gibbs and Achoe exchanged several emails concerning Achoe's PD.  On June 25, 2015, Achoe sent Gibbs two emails attaching PDs for the position "Management and Program Analyst, SK-0343-12"—the same job title and classification that Achoe had since joining the COOP in March 2012.  Mot. Ex. 15, June 25, 2015 Email; Mot. Ex. 16, June 25, 2015 Email.  A few minutes later, Gibbs emailed Achoe a PD for a different job title—Emergency Preparedness Specialist—with a higher full-performance level of SK-13.  Mot. Ex. 13, June 25, 2015 Email.  Gibbs did not explain in the email why she was attaching that particular PD—indeed, the email contains no text at all—and the parties have presented no other documentary evidence reflecting her intent.  Id.

The following week, on July 1, 2015, Gibbs notified Mr. Shepler and others in the SEC's Human Resources department that the August 2013 PD that Shepler and Drawhorn had drafted—Management and Program Analyst 0810X00, Series 343, SK level 12—had never been formally assigned to Achoe and requested guidance on doing so.  Mot. Ex. 10, July 1, 2015 Email.  Gibbs attached the August 2013 PD to the email.  Id.  The same day, Tawanna Harris informed Achoe that he would be issued that PD "effective today."  Mot. Ex. 11, July 1, 2015 Email.  On July 12, 2015, the SEC issued an SF-50 formally assigning Achoe PD No. 0810X00, Management and Program Analyst, Series 0343, with a full performance level of SK-12.  Mot. Ex. 12, July 12, 2015 SF-50.  It is this position description (and, presumably, the corresponding SF-50) that Achoe claims resulted in his demotion and the denial of a "career ladder" advancement opportunity.

Achoe pursues two lines of argument in support of his claim.  First, he asserts that his initial Management and Program Analyst PD when he joined the COOP was *not* a Series 343, full-performance level SK-12 position as is indicated by the March 2012 SF-50.  Rather, he

contends that he was given a Management and Program Analyst position in a different series—Series 301. Opp'n 2. *That* position, according to Achoe, began at grade SK-12 but had a "career ladder path" to SK-14. Id. As a result, Achoe reasons, his 2015 reassignment to a Series 343 SK-12 position with no grade-level advancement potential effectively constituted a demotion.

Achoe offers no documentary proof for this version of events and, as detailed above, his account is contradicted by the official personnel records that have been provided the Court—namely, the 2012 and 2015 SF-50s, which indicate that Achoe occupied a full-performance Series 343 SK-12 position during the entirety of his relevant tenure in the COOP.   The only support that Achoe cites for his contrary narrative is his own denial in response to one of the Government's Requests for Admissions, where he baldly states that "[t]he Commission and the Commission's Chief Operating Officer agreed to reassign me to Management and Program Analyst 'SK-0301-12' . . . , not to 'SK-0343-12.'" Opp'n Ex. G, Pl.'s Resps. to Reqs. for Admis. ¶ 14.  But even if this contention were deemed sufficiently plausible to contradict Achoe's official personnel records, it still would not create a dispute of fact for purposes of summary judgment because "a party responding to Requests for Admission under Rule 36 of the Federal Rules of Civil Procedure may not rely upon his own answers to a Request for Admission as the basis for a summary judgment motion." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 54 n.7 (2d Cir. 2003).[5]  Accordingly, nothing in the record supports an inference that Achoe's

---

[5] Under Federal Rule of Civil Procedure 56, a party asserting that a fact either cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record," which may "include[e] . . . admissions[.]"  Fed. R. Civ. P. 56(c)(1).  Admissions may be used to support or defeat summary judgment, but only if the content of the admissions is admissible.  See Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007).  Therefore, because a party's admissions are only admissible at trial if offered by the opposing party, see Fed. R. Evid. 801(d)(2), "[t]he admissions that may be relied on in a summary judgment motion are those of

reassignment in July 2015 amounted to a demotion from the position to which he was originally assigned when he joined the COOP in 2012.

Second, Achoe disputes the SEC's account of the events surrounding the PD that he was issued in July 2015. He maintains that when Gibbs emailed him the PD for the SK-13 Emergency Preparedness Specialist position (with no accompanying explanation), she in fact assigned him that new PD, only to rescind and rewrite the description after realizing that it was at a higher grade-level. Again, the record evidence cuts decidedly in the opposite direction. The 2012 SF-50 that the agency issued when Achoe first joined the COOP assigned him to a position at a full-performance SK-12 level. The August 2013 PD that Mr. Shepler attests that he prepared for Achoe's position in August 2013, but which was never formally assigned, is likewise at a full-performance SK-12 level. That is the same PD that Gibbs forwarded to the agency's Human Resources department in July 2015 so that it could (belatedly) assign it to Achoe through a new SF-85. All these documents point to the conclusion that Gibbs viewed Achoe as an SK-12, Series 343, Management and Program Analyst.

As for why Gibbs emailed Achoe a draft description for an SK-13 Emergency Preparedness Specialist position, the record is silent. Achoe points only to the explanation contained in his response to the Government's interrogatories, which merely parrots the conclusory allegation in the Complaint that Gibbs and other members of management intentionally downgraded the SK-13 Emergency Preparedness Specialist PD in order to "affect my career growth, upward mobility, and career ladder." Compare Opp'n Ex. B, Pl.'s Resp. to Def.'s First Set of Interrogs. ¶ 2 with Compl. ¶ 10. That is not enough to create a material

---

the opposing party; a party may not rely on its own answers to a request for admission to support or oppose a summary judgment motion." 11 Moore's Fed. Prac.§ 56.93 (2020).

dispute of fact as to whether Gibbs assigned him the higher-level position.  Absent other record evidence, a jury would be left only to speculate about the intent of Gibbs' email.  Because Achoe has not offered evidence to support an inference that Gibbs assigned him to a SK-13 position, it naturally follows that he has not shown that he suffered an adverse action when, just a week later, the agency assigned him to the exact same SK-12 position that he had held since March 2012.

To the extent Achoe contends that he suffered an adverse action because Gibbs failed to *promote* him to an SK-13 position in July 2015, the Government has presented uncontroverted evidence that Achoe was not eligible for promotion by anyone (including Gibbs) at that time. Specifically, Mr. Shepler, the human resources official, states in his declaration that, because Achoe had previously (since March 2012) been in a position that had a full-performance level of SK-12, he could not have been reassigned to an SK-13 position (or a position with beyond-grade advancement potential) without going through a competitive posting or a "desk audit" establishing that his job duties had expanded. [6]   Mot. Ex. 8, Shepler Decl. 1.  Because Achoe did not undergo either of those processes, the Government maintains that he was ineligible for reassignment to an SK-13 position.  Id.

---

[6] "A desk audit is a process by which an employee may request [his] work to be reviewed.  If, in the eyes of the reviewers, that work is at a higher level than that at which the employee is currently graded, the employee will be promoted to the level that is reflected by [his] performance.  This is sometimes called an 'accretion of duties' promotion, because the desk audit is meant to trigger a promotion to match the employee's 'accretion of duties' over time." Rand v. Sec'y of the Treasury, 816 F. Supp. 2d 70, 72 n.1 (D.D.C. 2011) (alteration and citations omitted).  Although Achoe does not raise the argument directly, and the Court therefore does not decide it, at least one court in this district has "held as a matter of law that denials of desk audits . . . do not constitute adverse employment actions." Brookens v. Solis, 635 F. Supp. 2d 1, 4 (D.D.C. 2009); cf. Rand, 816 F. Supp. 2d at 74 (dismissing as conceded plaintiff's claim that the Treasury Secretary discriminated against her by failing to complete a desk audit).

Achoe disputes that a grade-level promotion can only come after a competitive posting or a desk audit. Opp'n Pl. Statement of Disputed Fact ¶ 36. For support, he points to statements in Shepler's EEO affidavit that "[c]hanges and edits to the PD are requested via management who directly supervise the position" and that the role of the human resources department was simply "to ensure accurate title, series, and grade determinations based upon the duties provided by management." Id. (quoting Opp'n Ex. O, Shepler EEO Aff. ¶ 3). But that elides the key question. Whether Gibbs could have requested that Achoe's PD be changed to reflect his current duties (which she in fact did) says nothing about whether she or anyone at the SEC could have unilaterally promoted Achoe to a higher grade-level. On that point Shepler's answer is clear: "Neither the Securities and Exchange Commission nor Kelly Gibbs . . . could legally have placed Plaintiff into a position with a higher career ladder promotion potential than SK-12 without a competitive posting or a desk audit." Mot. Ex. 8, Shepler Decl. ¶ 7; see also Opp'n Ex. O, Shepler EEO Aff. ¶ 9. It is undisputed that Achoe did not undergo either of those processes. The record therefore demonstrates that Gibbs did not have the authority to promote him in June 2015.[7] And because Achoe was not eligible for a promotion, failing to receive one could not

---

[7] Achoe does state in one of his interrogatory responses that Gibbs *could* have unilaterally assigned him a higher position. Opp'n Ex. B, Pl.'s Resp. to Def.'s First Set of Interrogs. ¶ 2. A party's verified interrogatory responses, unlike statements made in responses to requests for admission, may be offered by that party as summary judgement evidence. See 11 Moore's Fed. Prac. § 56.93 (2020) ("Interrogatory answers filed in the instant action may be cited in support of or in opposition to a motion for summary judgment to support an assertion that a fact cannot be or is genuinely disputed. Their consideration is subject to the general summary judgment requirement that their content would be admissible at trial."). But, Achoe's unadorned contention on this point would be inadmissible because it is not supported by any evidence in the record and appears to rest on nothing more than his conjecture about SEC personnel policy. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Accordingly, it is

have been an adverse action.  See Adesalu v. Copps, 606 F. Supp. 2d 97, 103 (D.D.C. 2009)

("Plaintiff does not dispute defendant's assertion that in order to be promoted to a GS–14 level,

he was required to participate in a competitive promotion process or request a desk audit to

determine that he should be promoted non-competitively through accretion of duties.  Even if

[plaintiff's supervisor] did promise plaintiff that plaintiff would be promoted, and later rescinded

that promise, [the supervisor] never had the authority to fulfill this promise; thus defendant's

maintenance of plaintiff at his current grade is not an adverse employment action.");  Boyd v.

Snow, 335 F. Supp. 2d 28, 37 (D.D.C. 2004) ("Because [a supervisor] was not authorized to take

such action . . . maintaining [the plaintiff's] status at grade 13, step 10 could not have been

retaliatory.); see also Chambers v. Sebelius, 6 F. Supp. 3d 118, 130 (D.D.C. 2013), aff'd sub

nom. Chambers v. Burwell, 824 F.3d 141 (D.C. Cir. 2016) (finding no genuine issue of material

fact as to whether the plaintiff's supervisors "lacked the authority to promote her or unilaterally

create the position she sought" because the plaintiff was "not in a promotion allowed career

ladder," given the supervisors' "repeated[] and consistent[]" testimony regarding their authority

to promote) (citing Adesalu, 606 F. Supp. 2d at 103).

   The Court will, accordingly, grant the Government's motion for summary judgment for

claims premised on the PD reassignment.

---

insufficient to create a genuine issue of material fact about whether a competitive posting or desk
audit was required before he could be promoted.

## IV.  Conclusion

Because Achoe has not established that he suffered an adverse employment action as required to make out a *prima facie* case of discrimination under Title VII and the ADEA, the Court will grant Defendant's Motion for Summary Judgment.[8]  A separate Order will follow.

 

 

 

 

                                    _____

                                    CHRISTOPHER R. COOPER
                                    United States District Judge

Date:  <u>May 28, 2020</u>

---

[8] Because the government based its motion solely on the ground that Achoe failed to establish a *prima facie* case, the Court has not analyzed the other two prongs of the <u>McDonnell Douglas</u> framework.